NOT FOR PUBLICATION

<div style="float:right; border:1px solid;">

**FILED**

JAMES J. WALDRON, CLERK

[May 10, 2013]

U.S. BANKRUPTCY COURT
CAMDEN, N.J
BY: /s/ Christopher Fowler, Deputy

</div>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————
                                        :
IN RE:                                  :
                                        :
STACY M. ALLEN,                         :    CHAPTER 11
                                        :
                    Debtor.             :    CASE NO. 13-14348 (GMB)
                                        :
—————————————————   :    MEMORANDUM OPINION


APPEARANCES


Ryan M. Ernst, Esquire
Thomas D. Bielli, Esquire
Daniel Patrick Murray, Esquire
O'Kelly Ernst & Bielli
901 Market Street,
Suite 1000
Wilmington, DE 19801
Attorney for the Debtor

Edward L. Paul, Esquire
Michael A. Katz, Esquire
Paul & Katz, P.C.
1103 Laurel Oak Road, Suite 105C
Voorhees, New Jersey 08043
Attorneys for Creditor, Advanced Telecommunication Network, Inc.

Jason H. Baruch, Esquire
Trenam Kemker
101 E. Kennedy Boulevard
Suite 2700
Tampa, FL  33602
Special Counsel for Advanced Telecommunication Network, Inc.

Office of the United States Trustee
One Newark Center
Suite 2100
Newark, NJ  07102

Presently pending before the Court is the Motion of Advanced Telecommunication's Network, Inc. ("ATN") for Relief from the Automatic Stay or in the alternative to Dismiss the bankruptcy case of Debtor Stacy Allen (the "Debtor"). After extensive briefing and a lengthy evidentiary hearing conducted on April 4, 2013, and upon consideration of the evidence presented and admitted, this Court finds that the movant, ATN, has failed to show "cause" sufficient for granting it relief from the automatic stay afforded to Debtor under the Bankruptcy Code. Moreover, ATN has failed to establish "cause" for dismissal of the Debtor's bankruptcy case, filed under Chapter 11, at this stage in the proceedings. Denial of both of ATN's motions is without prejudice.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and Standing Order of Reference from the United States District Court for the District of New Jersey dated September 18, 2012. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (G). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## I.    BACKGROUND

On March 1, 2013 Stacy M. Allen filed the within petition seeking to reorganize her financial affairs pursuant to chapter 11 of Title 11 of the United States Code (the "Code"). After moving to withdraw the reference to the District Court, which was summarily denied by the District Court, ATN filed the within Motion for Relief from Stay and requested that said motion be heard on shortened time. Finding that ATN had failed to allege sufficient cause for a hearing on shortened time, this Court scheduled ATN's motion in the normal course. ATN then filed a Motion to Dismiss the Debtor's

bankruptcy case, which closely resembled ATN's Motion for Relief from Stay, and both motions were scheduled to be heard on April 4, 2013.

On March 15, 2013, the Debtor filed her schedules and statements, listing total assets in the amount of $812,822.66, liabilities in the amount of $42,405.52, potential tax liabilities from the IRS and State of New Jersey Division of Taxation, and contingent, unliquidated and disputed claims of ATN with an amount listed as "unknown."

Thereafter, ATN filed a supplemental brief in support of its motions, and also filed a motion requesting that the Court take judicial notice of the entry and filing of certain orders and opinions entered by the United States Bankruptcy Court for the Middle District of Florida. Said motion was heard on April 2, 2013 and this Court entered an order taking judicial notice of the entry of, inter alia, several orders and opinions by the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in the adversary proceeding captioned Advanced Telecommunication Network, Inc. v. Daniel W. Allen, et al., No. 03-ap-122 (the "ATN Litigation").

On April 4, 2013 this Court held a hearing on ATN's Motion for Relief from Stay and Motion to Dismiss. During the course of the hearing, ATN attempted to submit several exhibits into evidence. Several exhibits were admitted at the hearing, while issues of admissibility of several others were taken under advisement by this Court. Stacy Allen was present during the hearing and was cross examined by counsel for ATN. At the conclusion of the hearing, this Court took all matters under advisement, including the evidentiary issues, and noted that a ruling would be forthcoming in the following weeks. On May 8, 2013 this Court ruled on the admissibility of each of the exhibits taken under advisement.

3

While this Memorandum Opinion will not recite at length the history of the litigation between ATN and Debtor's husband, Daniel Allen, which has been ongoing since at least 2003 and relates to actions which occurred in the 1990's, some brief background is necessary.  Daniel Allen, Debtor's husband, received approximately $6 million in settlement proceeds from ATN in or around 1999 after several years of state court litigation involving a shareholder dispute.  Daniel Allen relinquished his interest in ATN to the other managing member in exchange for the settlement proceeds.  Several years later the then principal of ATN, a different individual who had received ATN stock as a result of a settlement in unrelated litigation, caused ATN to file for bankruptcy relief. Immediately thereafter, ATN filed an adversary complaint against Daniel and David Allen (the "Allen Brothers") alleging, *inter alia*, claims of actual fraud, constructive fraud and unjust enrichment as a result of the 1999 settlement payment.

It is alleged by the parties that Daniel Allen, upon receipt of the settlement funds in 1999, consulted with an estate planning professional who suggested the creation of a trust vehicle for retirement planning purposes.  These trust vehicles, hereinafter referred to as the "Offshore Trusts," were concededly funded, at least in part, by the settlement funds.  During the pendency of the ATN Litigation, ATN requested that the Florida Bankruptcy Court enter repatriation orders requiring Daniel Allen to repatriate funds to the United States from the Offshore Trusts and to provide ATN with a complete written accounting of the "Assets." In making rulings on ATN's repatriation requests, the Florida Bankruptcy Court defined the term "Assets" as those "assets transferred to [the Allen Brothers] pursuant to the Settlement, Stock, Purchase and Escrow Agreement dated January 12, 1999 (collectively, the "Assets")."  <u>ATN v. Daniel Allen, et al.</u>, Case No.

4

6:03-ap-00122KSJ, Doc. 70, 1/23/2004.  Significantly, there was no requirement in the repatriation orders that the funds be turned over to ATN, as there had been no final determination on the merits in the ATN Litigation.  It is also significant to note that in defining the term "Assets," the order simply refers to all of the funds transferred as part of the 1999 settlement; there is no indication that in defining the term "Assets," the orders were intended to create ownership rights in or over any property.

On February 18, 2005, after a three day bench trial, the Florida Bankruptcy Court ruled in favor of the Allen Brothers in the ATN Litigation, dismissing the complaint against them. All prior repatriation orders were vacated, consistent with the ruling at that time in favor of the Allen Brothers.  ATN appealed the final judgment and on September 25, 2007, the Eleventh Circuit Court of Appeals reversed and remanded the ATN Litigation for further proceedings consistent with the appellate ruling.  On July 10, 2009, the Florida Bankruptcy Court entered judgment in favor of ATN, with the judgment being later reduced to $6 million.  Specifically, the Florida Bankruptcy Court found that the 1999 settlement was a constructively fraudulent transfer. More motions and appeals followed, with the Eleventh Circuit affirming on June 8, 2011 that the Allens had waived their right to further appeals and reaffirming the final judgment in favor of ATN.

ATN began its collection efforts pursuant to proceedings supplementary allowed by Bankruptcy Rule 7069(a)(1) in early 2011.  As the Florida Bankruptcy Court noted in a July 28, 2011 Order, "[a]s a judgment creditor, ATN want[ed] to proceed with discovery in aid of execution on its final judgment...."  ATN v. Allen, 2011 Bankr. LEXIS 3069, *9.   To that end, ATN made a motion to have the 2004 repatriation orders

5

reinstated and to vacate the 2005 order vacating the 2004 repatriation orders.  Rather than granting the specific relief requested by ATN, the Florida Bankruptcy Court entered an order and attendant opinion which incorporated certain findings of fact and conclusions of law from the 2004 repatriation orders, but which specifically denied a blanket reinstatement of said orders (the "July 2011 Order").  As Judge Jennemann pointed out in the July 2011 Order, "the [2004] [r]epatriation [o]rders were properly vacated because, at that time, the Allens had won their case…I lack the ability to reinstitute an order whose effectiveness has lapsed." Id. *12.

In 2010, ATN commenced another adversary proceeding against, *inter alia*, the following individuals: Daniel Allen, David Allen, Stacy Allen, and John Does 1-10 (the "2010 Recovery Action").  The 2010 Recovery Action contained the following counts: avoidance, disgorgement, repatriation, imposition of constructive trust, restitution, recovery under 11 U.S.C. §§544 and 550, accounting, equitable lien, equitable subordination, declaratory relief, and costs and interest. The 2010 Recovery Action also named several corporations and limited liability companies as defendants.  The 2010 Recovery Action was filed by ATN on July 9, 2010 and on that same date ATN also filed a Motion for Abatement of the action.   Case No. 6:10-ap00177, Doc. No. 3 (Bankr.M.D.Fla, 7/9/2010).  ATN indicated in its Motion for Abatement that it did not intend to proceed with the 2010 Recovery Action during the pendency of certain appeals in the ATN Litigation and that it also did not intend to serve the complaint on the named defendants at that time. Id.  The Motion for Abatement was granted by court order on July 20, 2010 and the case sat dormant until February 8, 2013 when ATN filed an emergency motion to reopen the case, for an *ex parte* restraining order, and to seal the

aforementioned filings.    Case No. 6:10-ap00177, Doc. No. 7-9 (Bankr.M.D.Fla, 7/9/2010).    An order was entered on February 21, 2013 reopening the adversary and granting ATN's emergency *ex parte* motion for temporary restraining order. The court made "findings of fact and conclusions of law on a temporary basis," and the order "expire[d] fourteen days after its entry unless otherwise extended by the Court." ATN v. Allen, et al., Case No. 6:10-ap-00177 (Bankr.M.D.Fla.), Doc. No. 11.    A hearing was scheduled for March 4, 2013 and the order further required that ATN provide a copy of the *ex parte* temporary restraining order and all related filings to Defendant Stacy Allen. On February 22, 2013, ATN filed a certificate of service, attesting to the fact that Stacy Allen was served with the February 21, 2013 order and all related filings. ATN v. Allen, Case No. 6:10-ap-00177 (Bankr.M.D.Fla.), Doc. No. 15.    As noted above, on March 1, 2013, Stacy Allen filed the within petition seeking to reorganize her financial affairs pursuant to Chapter 11 of the United States Bankruptcy Code.

## II.    DISCUSSION

In order to expedite resolution of this matter, and all of the various arguments made by ATN in support of their Motions for Relief from Stay and to Dismiss, this Court deems it prudent to first address the issues of "*res judicata*" and "*privity/privy*" raised by the movant.  This is so because, after having fully addressed those issues and ultimately concluding their inapplicability to the instant case, it becomes clear that the movant has failed to establish "cause" sufficient to warrant either relief from stay or dismissal in the bankruptcy case of the Debtor herein, Stacy Allen.

**(i)**    ***Res Judicata and Non-Party Preclusion***[1]

ATN argues that the "July 2011 order… conclusively establish[es] or creates *res judicata*, that the Assets are ATN's property ...[u]nder [s]ection 541(a)(1), (a)(3), (a)(7), and (b)(1)…[and] [h]ere, *res judicata* bars Stacy Allen from re-litigating any elements of the July 2011 order because she is in privity with her husband." See Doc. 23, pg. 10-14. First, this Court must look not only to the language of the July 2011 Order itself, but also to whom the Order was directed.

The July 2011 Order, entered on July 28, 2011 in the adversary case captioned Advanced Telecommunication Network, Inc., v. Daniel W. Allen, David D. Allen (In re Advanced Telecommunication Network, Inc.), Adv. No. 6:03-ap-122 (Bankr.M.D.Fla, 7/28/2011), is directed solely at the two named defendants, Daniel and David Allen.  The only appearances entered at the hearing on the repatriation requests were that of ATN and the Allen Brothers, along with the United States Trustee.  See ATN v. Allen, 2011 Bankr.LEXIS 3069 *1 (Bankr.M.D.Fla. July 28, 2011).  There is no indication that Stacy Allen had any representative at the hearing, nor that she was in attendance herself or even had notice thereof.  Moreover, the July 2011 Order is specifically directed at Daniel Allen alone, as Judge Jennemann remarked that it would be inappropriate to proceed with any collection efforts against David Allen in light of his recent bankruptcy filing.

Even if this Court were to agree with ATN's characterization of the intended legal effect of the July 2011 Order, which it does not, such findings would not be binding upon

---

[1] To the extent that ATN argues that a constructive trust has been established through the doctrine of *res judicata*, or that a constructive trust should be imposed pursuant to the terms of the July 2011 Order directed at Daniel Allen, the below discussion is applicable and conclusive and so ATN's constructive trust arguments will not be separately addressed.  Furthermore, this Court has already found in the bankruptcy case of Daniel Allen that ATN had failed to establish the elements necessary for the imposition of a constructive trust in ATN's favor.  See In re Allen, Case No 11-37671, March 2, 2012.

Stacy Allen unless ATN was able to establish that the terms of the July 11 Order should be binding upon her, despite the fact that she was not a party to the case or the order.

"It is a general principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115 (1940).[2]  Several exceptions have been recognized by the Supreme Court to temper this basic rule, even in the context of *res judicata* and non-party litigants.  *Res judicata* is the collective term for two separate doctrines: "claim preclusion" and "issue preclusion."  Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161 (2008).  Under the doctrine of claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  Id.  "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  Id. (internal citations and quotations omitted).  By "precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.  Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161 (2008) *citing* Montana v. United States, 440 U.S. 147, 153-154, 99 S. Ct. 970 (1979).

---

[2] ATN also argues that the July 2011 Order is in the nature of a "judgment *in rem*" which effectively "trac[ed] the Assets and establish[ed] ATN as their rightful owner."  See Doc. 23, ¶29.  As noted above, this Court disagrees with ATN's characterization of the July 2011 Order as a "tracing" order and notes that the 2004 repatriation orders were never reinstated and so are of no force and effect.  This Memorandum Opinion will address ATN's argument that the $6 million judgment and the July 2011 Order were in the nature of "*in rem*" judgments, as opposed to "*in personam*" judgments, more fully below.

ATN argues that both concepts are applicable herein, because the July 2011 Order "trac[ed] and establish[ed] ownership of the traced Assets, and the same claim exists [in Debtor's case] – whether ATN may obtain relief from stay based on its ownership of the Assets." Id.at Doc. 23, pg. 8.  As noted above, this Court disagrees with the manner in which ATN characterizes the actual holding of the July 2011 Order, but even assuming ATN  was accurate in its characterization, ATN would still have to show that the order should apply to Stacy Allen, a non-party to that litigation.  ATN argues that Stacy Allen, as a "*privy*" or "party in *privity*" should be bound to the terms of the July 2011 Order, despite lack of due process.

ATN bears the burden of proof with respect to its reliance upon the doctrine of *res judicata*.  Claim preclusion and issue preclusion are affirmative defenses and it is incumbent upon the party asserting such defense to plead and prove the defense.  See Fed.R.Civ.P. 8(c); Blonder Tongue Laboratories, Inc. v. University of Ill. Foundation, 402 U.S. 313, 350, 91 S. Ct. 1434 (1971); See also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Rules and Procedure, Jurisdiction (hereinafter "Wright & Miller") § 4405 at 83 (2d ed. 2002) ("A party asserting preclusion must carry the burden of establishing all necessary elements.").   As the Supreme Court has recognized, "direct evidence justifying nonparty preclusion is often in the hands of plaintiffs rather than defendants… [b]ut 'very often one must plead and prove matters as to which his adversary has superior access to the proof.'"  Taylor, 553 U.S. at 907; See also Gonzalez v. Banco Central Corp., 27 F.3d 751 (1st Cir. 1994) ("[t]he burden of persuasion ultimately rests with him who asserts that control (or the right to exercise it) existed to such a degree as would warrant invoking nonparty preclusion").

The Supreme Court squarely addressed the concept of non-party claim and issue preclusion in Taylor v. Sturgell, 553 U.S. 880 (2008).  The Taylor court began by stating the general rule that a "person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit…[and]…[t]he application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"  Id. At 892-893 quoting Richards v. Jefferson County, 517 U.S. 793, 798, 116 S. Ct. 1761 (1996).  The Taylor court explained: "though hardly in doubt, the rule against nonparty preclusion is subject to exceptions… [and] …[f]or present purposes, the recognized exceptions can be grouped into six categories." Id. at 893.  A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed litigation by non-litigants.  Id.

In Taylor, the defendants argued against delineation of discrete grounds and clear rules for nonparty preclusion, instead urging the court to adopt a "heavily fact driven" and "equitable inquiry" which would allow preclusion "whenever the relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment."  Id. at 898.  Only such a diffuse balancing could "account for all of the situations in which nonparty preclusion [was] appropriate," the defendants argued.  Id.  The Supreme Court expressly rejected that argument, first emphasizing the "fundamental

11

nature of the general rule that a litigant is not bound by a judgment to which she was not a party." Id. at 898 *citing* Richards, 517 U.S. at 798-99. The Supreme Court noted that in order for a party's representation of a nonparty to be "adequate" for preclusion purposes, at a minimum: (1) the interests of the nonparty and her representatives must be aligned, (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty, and oftentimes, (3) notice of the original suit to the persons alleged to have been represented. Id. at 900.

Applying Taylor to the instant case, it is clear that ATN is attempting to create a diffuse category of "close enough" relationships that the Supreme Court has expressly rejected. ATN has offered absolutely zero proof that Stacy Allen agreed to be bound by the ATN Litigation; that Stacy Allen was ever represented in the prior ATN Litigation, much less adequately; that she assumed control over the ATN Litigation; that she is attempting to relitigate issues as a proxy, or; that there is a statutory scheme which forecloses the instant litigation. ATN seems to be asserting that some sort of "substantive legal relationship" existed between Stacy Allen and Daniel Allen that would justify non-party preclusion without sufficient facts or proof. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. See Restatement (Second) of Judgments §§ 43-44 (1980). At least one court has explicitly held that "[t]hough the list of examples… is not exhaustive, the examples provided convince the [c]ourt that privity based on a spousal relationship is not intended by [this] category as articulated by the Supreme Court." See Dixon v. Selma, *et al*., 2011 U.S. Dist. LEXIS 74956 (U.S.Dist. S.D.Ala. July 11, 2011).

It is clear in the instant case that preclusion cannot be justified on the theory that that there was either a substantive legal relationship which should bind Stacy Allen or that she was adequately represented in the ATN Litigation by Daniel Allen or any other party.  Nothing in the record indicates that Daniel Allen understood himself to be acting on Stacy Allen's behalf in the ATN Litigation, that Stacy Allen even knew of the ATN Litigation at the time of the original repatriation orders, or that the Florida Bankruptcy Court took any special care to protect Stacy Allen's interests.  ATN asserts in its brief that "it is clear that Stacy's actions in concert with her husband qualify her as his 'privy,'" however, ATN has offered nothing by way of evidence of "concerted action," other than documents which established the Offshore Trusts (dated September 8, 1999) and documents evidencing her withdrawal of funds from the trust from January 2007 up to August 2011.  See ATN Exhibits 17 and 34, Exhibit B.  ATN has offered nothing by way of evidence to show that Stacy Allen was aware of the specifics of the ATN Litigation, that her interests were adequately protected in said litigation, that she was aware of any of the repatriation orders, or that Daniel Allen or anyone else ever understood themselves to be acting in a representative capacity over Stacy Allen in the ATN Litigation.

Having concluded that ATN has failed to establish that non-party preclusion is appropriate in this case, it would seem that there would be no need to further analyze ATN's arguments with respect to the *res judicata* effect, if any, of the July 2011 Order. For the sake of completeness, however, this Court will address the remainder of ATN's arguments with respect to the binding effect of the July 2011 Order.  This Court ultimately concludes that, even if the July 2011 Order were deemed to be binding upon

Stacy Allen by application of non-party preclusion, which it is not, the terms of the Order do not conclusively establish "ownership of the Assets" or "trace funds" as ATN asserts.

The July 2011 Order was entered by the Florida Bankruptcy Court after ATN requested that the court reinstate certain orders that were entered in 2004 requiring repatriation of certain funds to the United States.[3] The Florida Bankruptcy Court specifically declined ATN's request to both reinstate the 2004 repatriation orders and vacate its own previous order vacating the 2004 repatriation orders.  Instead, the Florida Bankruptcy Court adopted certain findings of fact and conclusions law contained in the 2004 repatriation orders, but entered said order effective July 28, 2011.  As noted above, the Florida Bankruptcy Court specifically held that "the [2004] Repatriation Orders were properly vacated because, at that time, the Allens had won their case… I lack the ability to reinstitute an order whose effectiveness has lapsed."  2011 Bankr. LEXIS 3069, *12.  Thus, a valid repatriation order was entered on July 28, 2011.

To the extent that the July 2011 Order adopted certain conclusions of law and findings of fact from the 2004 repatriation orders entered by Judge Briskman, this Court may "take judicial notice of a document filed in another court 'not for the truth of the matters asserted in [that] litigation, but rather to establish the fact of such litigation and related filings.'"  Liberty Mutual Ins., Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384,

---

[3] It is significant to note that the 2004 Repatriation Order entered by Judge Briskman on July 16, 2004 provides the following:

> The Court finds that … the Allens… have been under an obligation to provide a complete written accounting of certain assets obtained from ATN (the "Assets"), including their use, disposition, transfer and retention of the Assets with all supporting documentation for such accounting … since at least December 2, 2003…

See Doc. 137, Case No. 6:03-ap-00122-KSJ, 7/16/2004.  The 2004 repatriation orders do not appear to make conclusive determinations of who "owned" or had rights to the transferred "Assets."  Moreover, it does not appear that the July 16, 2004 Repatriation Order could be characterized as a "tracing" order that conclusively established ownership of the funds, as there had been no determination yet on the merits of the case.  Regardless, as noted above, the 2004 repatriation orders were vacated and were of no force and/or effect until certain aspects were partially incorporated by the Florida Bankruptcy Court on July 28, 2011.

14

1388 (2d Cir. 1992) (finding district court erred in taking judicial notice of bankruptcy court order to establish facts asserted therein.). Also, to the extent ATN has asked this Court to take judicial notice of the *ex parte* temporary restraining order entered by the Florida Bankruptcy Court against Stacy Allen on February 21, 2013, this Court has only taken judicial notice of the document to establish the fact that such litigation exists and the filings were made. To the extent ATN assumes that the findings of fact contained therein have somehow been established *via* judicial notice, ATN is mistaken.

The Federal Rules of Evidence provide that courts may only take judicial notice of facts outside the trial record that are "not subject to reasonable dispute." Fed.R.Bankr.P. 201(b). A judicially noticed fact must be either generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See, *e.g*., Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001); See also Morrissey v. Luzerne County Community College, 117 Fed.Appx. 809 (3d Cir. 2004) (holding that "facts adjudicated in a prior case fall short of th[e] standard" required under Fed.R.Evid. 201). "Findings of fact by a trier of fact are not indisputable within the meaning of Rule 201 because the 'findings were disputed at trial and if the case is overturned on appeal, they will be disputed again." 21B Charles Alan Wright & Kenneth W. Graham, Jr. Federal Practice and Procedure §5106.4 at pg. 235 (2d ed. 2005). "When offered to prove the facts stated, court records are hearsay; hence, they would be admissible as evidence only if they satisfied some hearsay exception…[A] court cannot take judicial notice of a fact that would be inadmissible if it were offered as evidence." Murphy v. K-Mart Corp., 2010 U.S. Dist. LEXIS 96693 (U.S. Dist. S.D., Sept. 15, 2010) *quoting* Wright & Graham,

15

supra § 5106.4 at pg. 231.  Put another way, a "court may take judicial notice of another court's record for the limited purpose of recognizing the 'judicial act' represented by the record or the subject matter of the litigation." <u>United States v. Jones</u>, 29 F.3d 1549 (11th Cir. 1994);  *See also*, <u>Liberty Mutual Ins. Co v. Rotches Pork Packers, Inc.</u>, 969 F.2d 1384 (2d Cir. 1992) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b); they are not usually common knowledge, nor are they derived from an unimpeachable source"); <u>United States v. Jones</u>, 29 F.3d 1549 (11th Cir. 1994) (stating that the effect of judicially noticing a fact is to preclude the opposing party from introducing contrary evidence and essentially direct a verdict against him as to the notice fact).

Thus, as applied in the instant case, this Court has taken judicial notice of the orders entered in the ATN Litigation, including the July 2011 Order and the *ex parte* Temporary Restraining Order entered against Stacey Allen in the 2010 Recovery Action. However, to the extent ATN asserts that this Court must take judicial notice of the "findings of fact" contained therein, they are incorrect in their assertion, as this Court is only permitted to take judicial notice of the existence of the documents and the judicial acts, if any, contained therein.   It would be wholly inappropriate to accept as true, the findings of fact in either the July 2011 Order or the February 22, 2013 *ex parte* temporary restraining order.  It is important to reiterate that the *ex parte* temporary restraining order entered against Stacy Allen without any opportunity afforded her to dispute the "findings of fact" entered on a "temporary basis."   Doc. 11, Case No. 6:10-ap-00177, pg. 1. Clearly, such "findings" are not "indisputable within the meaning of Rule 201."  Wright & Graham, supra, §5106.4 at pg. 235.

In sum, this Court concludes that Stacy Allen is not a *privy* of Daniel Allen, and is therefore not bound by doctrines of issue or claim preclusion to the terms of the July 2011 Order.  Moreover, even if this Court were to have found that ATN had met its burden to establish the elements of nonparty preclusion in this case, which it does not, this Court would find that the July 2011 Order does not establish ownership of assets or "trace" assets, as ATN asserts.  Furthermore, to the extent ATN relies upon findings of fact contained within the July 2011 Order, the 2004 repatriation orders, and the *ex parte* temporary restraining order against Stacy Allen, such facts are not subject to judicial notice under the Federal Rules of Evidence.

This Memorandum Opinion will next address ATN's argument that this Bankruptcy Court is somehow precluded from exercising jurisdiction over the bankruptcy case of Stacy Allen and her estate, as a result of the holding in <u>Princess Lida of Thurn & Taxis v. Thompson</u>, 305 U.S. 456, 59 S. Ct. 275 (1939), also known as the *Princess Lida* doctrine.

**(ii)**   ***Princess Lida Doctrine***

ATN argues that the *Princess Lida* doctrine applies in the instant case as a result of, *inter alia*, the July 2011 Order.  In order to address ATN's argument, a brief review of the *Princess Lida* doctrine is necessary.

The <u>Princess Lida</u> case established that a court in which an action is filed may not exercise jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought. <u>Princess Lida of Thurn v. Taxis v. Thompson</u>, 305 U.S. 456, 59 S. Ct. 275 (1939).  In <u>Princess Lida v. Thompson</u>, certain trustees of a fund first

brought an action for an accounting in the Common Pleas Court of Pennsylvania.  Id.

Subsequently, two of the five beneficiaries of the trust brought suit in the District Court

for the Western District of Pennsylvania, alleging mismanagement of the trust funds and

requesting that the trustees be removed and all the defendants be made to account and

repay the losses of the estate.  Id. at 459.  The Supreme Court of the United States held

that the District Court lacked subject matter jurisdiction over the subsequent action

because the earlier request for accounting in state court was a "quasi in rem" proceeding

and both courts could not exercise jurisdiction over the same property.  Id. at 465-68.

The court reasoned:

> … if the two suits are in rem, or quasi in rem, so that the court, or
> its officer, has possession or must have control of the property
> which is the subject of the litigation in order to proceed with the
> case and grant the relief sought the jurisdiction of the one court
> must yield to that of the other.  We have said that the principal
> applicable to both federal and state courts that the court first
> assuming jurisdiction over property may maintain and exercise that
> jurisdiction to the exclusion of the other, is not restricted to cases
> where property has actually been seized … but applies as well
> where suits are brought to marshal assets, administer trusts, or
> liquidate estates, and in suits of a similar nature where, to give
> effect to its jurisdiction, the court must control the property.

Id. at 466.  Thus, in order to fall within the *Princess Lida* doctrine, two requirements

must be met: (1) the litigation in both the first and the second forum are *in rem* or *quasi*

*in rem* in nature, and (2) the relief sought requires that the second court exercise control

over the property in dispute and such property is already in control of the first court."

Dailey v. National Hockey League, 987 F.2d 172 (3d Cir. 1993) (*citing* Princess Lida,

(305 U.S. at 466).

ATN argues that both of these elements exist in the instant case because the July 2011 Order, in ATN's words, "addressed squarely ATN's *in rem* right to recover the Assets that the Allens secreted in and then extracted from the offshore trust." Doc. 23, pg. 6. Regarding the second element, ATN argues that through her bankruptcy petition, "Stacy Allen requests here that this Honorable Court 'exercise control over the property in dispute and such property is already under the control of the first court,' the Florida Court." Doc. 23, pg. 6 (no internal citations or source given by ATN). Thus, ATN summarily states that the ATN Litigation and resultant July 2011 Order was an "in rem or quasi in rem" proceeding and that the Florida court already exercised control over the property in dispute.

In applying Princess Lida, this Court must first determine whether the action at issue is *in rem/quasi in rem* or *in personam*. If a court's jurisdiction is based on its authority over the defendant's person, the action is *in personam*. Shaffer v. Heitner, 433 U.S. 186, 97 S. Ct. 2569 (1977). If jurisdiction is based on the court's power over property within its territory, the action is *in rem* or *quasi in rem*. Id. Where the relief sought is a money judgment only, the action is *in personam*. Kline v. Burke Constr. Co., 260 U.S. 226, 43 S. Ct. 79 (1922).

In United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S. Ct. 343 (1936), the Supreme Court distinguished between *in rem* and *in personam* actions in a situation analogous to Princess Lida. In that case, the United States Government petitioned the district court for an accounting and other declaratory relief related to a specific group of deposits held by the Superintendent of Insurance of the State of New York at the Bank of New York. The deposits at issue were originally made by certain

19

Russian insurance companies, prior to a Russian decree in 1917 or 1918 which "confiscated and appropriated" the insurance companies and their assets.  Id. at 470.  After said decree, the Russian Government allegedly assigned their interests in the insurance companies, deposits included, to the United States Government.   Several insurance claimants had already commenced suit in state court alleging claims in relation to the companies and the deposits and were in the course of adjudication in state court.  Id. As noted above, the United States subsequently petitioned the District Court for an accounting and other declaratory relief related to the deposits, arguing that the state court law suits were merely *in personam*.  Rejecting this contention, the Supreme Court held the state court suits were *in rem* because:

> These suits are not to enforce a personal liability but to obtain possession of the respective funds.  The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court… the object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the [same] property in the United States to the exclusion of all those whose claims are being adjudicated in the state proceedings.

Bank of New York, 296 U.S. at 468.  In this quote, the Supreme Court characterizes *in personam* actions as those that "enforce a personal liability," or "establish a debt or a right to share in property, and thus an adjudication which might be had without disturbing the control of the state court."  Id.  In the instant case, ATN seeks monies owed to it by Debtor's husband, Daniel Allen, pursuant to an *in personam* judgment.  Nothing in the July 2011 Order can be characterized as transforming the *in personam* action to recover monies owed to ATN into an *in rem* or *quasi in rem* proceeding.  In the  Bank of New York case there were identifiable *res* being held at the depository institution, with various parties asserting competing interests therein.  The parties in Bank of New York were not

20

seeking a judgment establishing liability for a debt owed, like the case of <u>ATN v. Allen</u>, and the District Court could not have granted the United States' relief without also exercising jurisdiction over the specific and identifiable deposited funds.

This Court finds it instructive that the July 2011 Order specifically states that it was precipitated by ATN's desire to "collect upon its judgment pursuant to proceedings supplementary allowed by Bankruptcy Rule 7069(a)(1)."   See <u>In re ATN</u>, 2011 Bankr.LEXIS 30069 *8-9.  As Judge Jennemann went on to explain in a footnote, "[a]s a judgment creditor, ATN wants to proceed with discovery in aid of execution on its final judgment consistent with Fla Stats. §56.29, which pursuant to Fed.R.Civ.P. 69(a)(1) is applicable in this adversary proceeding." <u>Id</u>. at *9.  Rule 69 specifically provides for the applicable procedure in ***enforcing a money judgment***.  Fed.R.Evid. 69(a)(1) (***emphasis added***).

In <u>Koken v. Viad Corp.</u>, 307 F. Supp. 2d 650  (E.D.Pa. 2004), the District Court had to determine whether the removal of a preference action to district court was improper where the state court retained exclusive jurisdiction over the liquidation proceedings of the defunct insurance agent that made the preferential payment to defendant.   Recognizing that while state and federal courts generally must not interfere with or try to restrain each other's proceedings, there exists an exception, as recognized in <u>Princess Lida</u>, where a court has custody of certain property and must retain exclusive jurisdiction over it thereafter.  <u>Id</u>. at 655.  In <u>Koken</u>, the plaintiff insurance commissioner in her official capacity as liquidator of an insurance company was seeking a money judgment against Viad for a preferential payment it received from the, now defunct, insurance company. <u>Id</u>.   The insurance commissioner argued that the action was

improperly removed because the state court had exclusive jurisdiction over the liquidation proceedings and the monies sought to be recovered should be considered property of the liquidating entity. Id. The Koken court found, however, that the plaintiff insurance commissioner was merely seeking to recover a money judgment from the defendant. Id. The court reiterated that the plaintiff insurance commissioner clearly had *in rem* jurisdiction over the defunct insurance company's assets as a result of the liquidation proceedings, but the instant preference dispute was not for the recovery of a specific piece of the insurance company's property. Id. at 656. The court reasoned as follows:

> If the Commissioner [Plaintiff] is victorious in the underlying action, [defendant] will not be returning the same check or dollar bills it received from Reliance. The payment received by [defendant] is not a sequestered nor distinguishable piece of property… unlike an identifiable piece of property… [cash] is fungible. Because the instant action does not involve a specific piece of property, but rather a money judgment, the action is in personam.

Id. at 656. As to the second prong of the *Princess Lida* doctrine, the Koken court found that there was no need for it to exercise control over the insurance company's assets to effectuate the judgment in the instant preference action by the insurance commissioner against the defendant. "All that must be determined is whether the payment made to [defendant] was a voidable preferential payment entitling [the commissioner] to a money judgment in the amount of the payment." Id. at 657.

In the instant case, like the avoidable preference in Koken, the 1999 transfer was held to be a constructively fraudulent transfer and a money judgment was entered against Daniel and David Allen in 2009. The July 2011 Order directed Daniel Allen to return any monies held in the Off-Shore Trust Account to the United States and deposit said funds

with counsel for ATN.   The July 2011 Order was entered as a result of ATN's commencement of proceedings supplementary. *i.e.*, collection proceedings, allowed by Bankruptcy Rule 7069(a)(1).  This Court finds it significant that the Florida Bankruptcy Court has already expressed its unwillingness, or rather its inability, to assist in ATN's "collection efforts of any kind…" against a debtor in bankruptcy until ATN "properly obtains relief from the stay" in that debtor's bankruptcy proceeding.  See 2011 Bankr. LEXIS 3069, *12.

Thus, this Court concludes that the *Princess Lida* doctrine is inapplicable in this case, as the ATN litigation was not an *in rem* or *quasi in rem* proceeding.  Moreover, the relief sought by ATN in the ATN Litigation, *i.e.*, an *in personam* money judgment, does not require that this Court exercise control over property that is already under the control of the first court.

It is also important to note that it is undisputed that there are no funds remaining in the Off Shore Trust account that was the subject of the July 2011 Order.  Thus, even if this Court were to hold that the July 2011 Order could be construed as an *in rem* judgment exercising control over a *res*, there is no more *res* in existence.  Thus, the Florida Bankruptcy Court would have nothing to exercise control over if this Court were to refrain from exercising jurisdiction in the Debtor's case, which it will not.[4]

---

[4] Even if this Court were to hold that the action was in the nature of an *in rem* or *quasi in rem* suit, that would still not end the inquiry.  The enactment of 28 U.S.C. §1334 in 1984 was intended to abrogate traditional comity concerns in bankruptcy cases.  In re Medical Care Management., 361 B.R. 863, 870 (Bankr.M.D.Tenn. 2003).  As explained in In re Murray, 350 B.R. 408 (Bankr. S.D.Ohio 2006):

> The court notes that recently the Sixth Circuit abrogated its prior rule announced… and recognized the bankruptcy court's superior jurisdiction over a debtor's property even though a state court had already exercised in rem jurisdiction over the property… Our decision to award superior jurisdiction to the state court was based on traditional notions of comity which require that, as between state and federal courts, jurisdiction must be yielded to the court that

### (iii)    Relief from Stay/Dismissal and Bad Faith

Having determined that the Debtor, Stacy Allen, is not a *"privy"* for non-party preclusion purposes, and having determined that the findings of fact contained in the July 2011 Order, the 2004 repatriation orders, and the February 22, 2013 *ex parte* Temporary Restraining Order are not susceptible to judicial notice under the Federal Rules of Evidence, this Court is left with little by way of evidence offered by ATN with respect to her alleged "bad faith."   The brief in support of ATN's Motion to for Relief from Stay and Motion to Dismiss are replete with references to her husband's conduct, orders referencing her husband's conduct, and rehashed arguments from ATN's filings in the bankruptcy case of Debtor's husband, Daniel Allen.   ATN argues that in the instant case,

---

first acquires jurisdiction over the property. We traced this holding to a broader doctrine which advocates granting exclusive jurisdiction to the first court asserting in rem jurisdiction, when both courts base jurisdiction on control of the same property.  See, e.g., Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939).

Despite the federalism interests served by such a rule, we agree with debtor's argument that the 1978 and 1984 changes to the Bankruptcy Code were primarily aimed at getting away from the kind of in rem jurisdiction set out in Princess Lida and in In re Washington.  The jurisdiction granted in 28 U.S.C. §1334(d) indicates a conscious effort by Congress to grant the bankruptcy court special jurisdiction to preclude the type of jurisdictional disputes evidenced in those cases.

See In re Murray, 350 B.R. 408, 415-416 (Bankr.S.D.Ohio 2006) *citing* In re National Century Finn Enters., Inc.,) 423 F.3d 567, 573-74 (6th Cir. 2005).   In addition, there have been several subsequent Supreme Court decisions which seem to reaffirm the bankruptcy court's jurisdiction conferred in 28 U.S.C. §1334.  See Marshall v. Marshall, 126 S.Ct. 1735 (2006) (reversing the Court of Appeals' recognition of the probate exception limiting federal jurisdiction); Ankenbrandt v. Richards, 504 U.S. 689 (1992) (limiting the domestic relations exception); Central Virginia Community College v. Katz, 546 U.S. 356 (2006)

The combined effect of the statutory provisions and the subsequent case law has the effect of placing exclusive jurisdiction in the bankruptcy court for all actions involving property of this Debtor's estate.  In the instant case, ATN asks this Court to refrain from exercising jurisdiction conferred by 28 U.S.C. §1334 with respect to the Debtor's chapter 11 case in order to allow ATN to continue with their collection proceedings against the Debtor's husband without any "interference" which might result from Debtor's bankruptcy filing. Here, 28 U.S.C. §1334 grants this Court broad and comprehensive jurisdiction to administer Stacy Allen's estate and ATN's ancillary desire to continue with collection proceedings should not abrogate from that broad and comprehensive grant of jurisdiction.

both the absence of "good faith" and the presence of "bad faith," warrant the relief sought.

Although there is no express requirement in the Code that petitions be filed in good faith, the majority of courts find that there is an "implicit" good faith requirement in filing a bankruptcy petition to prevent fraud or abuse of the bankruptcy process. See, *e.g.*, In re Ravick Corporation, 106 B.R. 834, 842-43 (Bankr. D. N.J. 1989) (A bankruptcy petition should be dismissed where the petition "is not filed to achieve the valid, legitimate purposes of the rehabilitative provisions of Chapter 11"). Courts have also held that a Chapter 11 petition filed in bad faith is "cause" to grant relief from the automatic stay under § 362(d)(1). See, In re Trident Associates Ltd. Partnership, 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995) (upholding bankruptcy court's decision to lift automatic stay and dismiss petition because petitioner filed in bad faith to isolate insolvent property and its creditors on the eve of foreclosure); In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988).

Generally, there is a presumption that debtors file petitions for reorganization in good faith. See In re Petralex Stainless, LTD., 78 B.R. 738, 743 (Bankr. E.D. Pa. 1987) (citing U.S. Fidelity & Guar. Co. v. DJF Realty and Suppliers, Inc., 58 B.R. 1008 (N.D. N.Y. 1986). The burden of proving bad faith is on the moving party and must be demonstrated by a preponderance of the evidence. See Id.

(a)    *Good Faith*: The United States Supreme Court has identified two of the basic purposes of Chapter 11 as: (1) preserving going concern value; and (2) maximizing the property available to satisfy creditors. NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108, 119 (3d Cir. 2004)

(citing Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). Accordingly, the two inquiries that are particularly relevant to the issue of "good faith" pursuant to § 1112(b) are whether the petition: 1) serves a valid bankruptcy purpose, for example, by preserving going concern value or maximizing the value of the debtor's estate; and 2) is filed merely to obtain a tactical litigation advantage. Id. at 119-120. Notably, Chapter 11 filings arising out of a two-party dispute or triggered by state court proceedings do not *per se* constitute bad faith filings. In re Walden Ridge Dev., LLC, 292 B.R. at 62 (citing In re Ravick Corp., 106 B.R. 834, 850 (Bankr. D.N.J. 1989)); In re Shar, 253 B.R. 621 (Bankr.D.N.J. 1999) ("Corporations and individuals often file for bankruptcy after having a substantial judgment entered against them and there is no reason to presume that these filings are in bad faith."). It is also important to note that "[i]t is well established that a debtor need not be insolvent before filing for bankruptcy protection." In re SGL Carbon, Corp., 200 F.3d 154, 163 (3d Cir. 1999). However, where the evidence demonstrates that the filing for bankruptcy relief "is intended to frustrate the legitimate efforts of creditors to **enforce their rights** against the debtor, dismissal for 'cause' is warranted." In re Ravick Corp., 106 B.R. at 844 (citing In re Brandywine Assocs., Ltd., 85 B.R. 626 (Bankr. M.D. Fla. 1988) (**emphasis added**)).

    *(b)*    *Bad Faith*: In determining whether bad faith exists, "the facts and circumstances of a particular case must be examined and no one factor should be controlling." Ravick, 106 B.R. at 843. While no exhaustive list of all conceivable factors which could be relevant in the good faith analysis is possible, courts have outlined illustrative factors that can be considered. For example, in In re Y.J. Sons & Co., Inc.,

26

212 B.R. 793 (D. N.J. 1997) District Court Judge Lechner noted that the following

factors have been recognized as evidence of a bad faith filing:

> (1) The debtor has only one asset, the property, in which it does not hold legal title;
>
> (ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
>
> (iii) The debtor has few employees;
>
> (iv) The property is the subject of a foreclosure action as a result of arrearages on the debt;
>
> (v) The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the state court action; and
>
> (vi) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce their rights.

Id. at 802 (citing Phoenix Piccadilly, 849 F.2d at 1394-95); see also In re Little Creek,

779 F.2d 1068 at 1072-73 (5th Cir. 1986) (enumerating several factors for courts to

consider in determining bad faith).

   In the instant case, ATN argues that "here, the court orders and filings cited above

indisputably establish every factor above."  See Doc. 23, ¶87.  Moreover, ATN argues

that "[e]specially in light of the pattern of conduct that her husband engaged in, it is clear

that Stacy Allen, 'abus[ed] the judicial process to delay creditors or escape the day of

reckoning in another court,' and filed her petition 'solely to create the automatic stay,'

filing just a few days before the injunction hearing before the Florida Court.'"  See Doc.

23, ¶88.

Debtor argues, contrary to ATN's assertions, that her petition has been filed in good faith and for the valid bankruptcy purposes of maximizing the value of her assets, determining the extent of her liabilities, protecting the interests of her creditors and pursuing a successful reorganization.  The Debtor correctly points out that any conduct that her husband may or may not have engaged in is of no relevance to whether the Debtor herself filed her bankruptcy case in good faith.  Furthermore, Debtor concedes that the timing of her petition was not only to address her financial uncertainty as a result of the 2010 Recovery Action, but also to address her financial situation, including any contingent obligations that might be owed to ATN.

This Court finds that ATN has failed to meet its burden of establishing a prima facie case of bad faith.  Moreover, even if this Court were to find that ATN had met its threshold burden, at this early stage in the proceedings, the Debtor has sufficiently alleged her good faith by evidencing a valid bankruptcy purpose.  ATN's argument that she is forum shopping and is attempting to gain a tactical litigation advantage are unpersuasive in light of the stature of the 2010 Recovery Action.  As noted above, ATN filed the 2010 Recovery Action Complaint and the motion to abate proceedings on the same day.  Indeed, there is no indication that the Debtor was ever officially served with a copy of the Complaint and no proceedings have taken place with respect to said litigation, apart from an *ex parte* emergency request for temporary restraints.  Moreover, the cases cited by ATN in support of its position are distinguishable, as those cases involve litigation in other *fora* where final judgment had been entered and liability

28

conclusively established, or the petition was filed on eve of trial after years of litigation with the creditor.[5]

In evaluating the pending Motion for Relief from Stay and Motion to Dismiss, the narrow function of this Court is simply to determine whether movants have established that the debtor lacks a plausible, legitimate reorganization (or liquidation) purpose. Based upon the evidence presented on the record, the Court concludes that the burden has not been met. The mere fact that the chapter 11 filing may have been triggered by an *ex parte* application for temporary restraints in the 2010 Recovery Action is insufficient by itself, to constitute bad faith. "While no one can say, at this early stage of the case, whether the [D]ebtor can successfully reorganize (or liquidate) under chapter 11, particularly in the face of the hostility exhibited by [ATN], the purpose of chapter 11 is to give the [D]ebtor that opportunity." In re Clinton Centrifuge, 72 B.R. 900, 908 (Bankr.E.D. Pa. 1987).

---

[5] See *e.g.*, In re Shar, 253 B.R. 621 (Bankr.D.N.J. 1999) (finding no valid bankruptcy purpose where "a final order has been issued by the state court against the Debtors and the Debtors have exhausted the appellate process in challenging this order all the way to the United States Supreme Court"); Matter of Grieshop, 63 B.R. 657 (N.D.Ind. 1986) (creditor had already obtained a final judgment in foreclosure against debtor's real property); In re Trident Assoc. Ltd. P'ship, 52 F.3d 127 (creditor obtained final judgment in foreclosure pre-petition, "new debtor" formed on eve of sheriff sale to insulate property from final foreclosure judgment in bankruptcy is not valid bankruptcy purpose);   In re Stamford Color Photo, Inc., 105 B.R. 204 (Bankr.D.Conn. 1989) (debtor filed after adverse judgment entered in fraudulent conveyance action, ordering debtor to turnover proceeds from sale of property); In re SB Props., Inc., 185 B.R. 198 (E.D.Pa. 1995 ("Appellant filed its Chapter 11 case effectively derailing six years of state court litigation"); In re Clinton Centrifuge, Inc., 72 B.R. 900 (Bankr.E.D.Pa. 1987) (bankruptcy filing after over two years of litigation, a four day trial, an adverse judgment and order requiring a supersedeas bond for stay pending appeal, bankruptcy court held filing by debtor **not** in bad faith); In re South Canaan Cellular Investments, LLC, 420 B.R. 625, 630 (E.D.Pa. 2009) (where complaint and application for declaratory judgment against debtors were filed just 48 hours before petition date, court held "given [creditor's] request for a monetary judgment against the debtors, with the potential for execution upon that judgment that would eliminate the [debtor's] partnership interests, continuation of the state court litigation would neither be in the debtors' best interests nor in the interests of its non-LTI creditors.").

**III.      CONCLUSION**

For the reasons set forth above, the Motion for Relief from Stay and the Motion to

Dismiss will be denied.  An order to that effect will be entered.

BY THE COURT:

GLORIA M. BURNS
United States Bankruptcy Judge

Dated:  May 10, 2013